OPINION
{¶ 1} Harrison Williamson Jr. appeals from his conviction in the Montgomery County Common Pleas Court of one count of aggravated robbery with a gun specification. After a jury trial, Williamson was sentenced to six years for the aggravated robbery and three years on the gun specification, to be served consecutively for a total of nine years. *Page 2 
 {¶ 2} Williamson raises one assignment of error in this appeal:
 {¶ 3} "THE TRIAL COURT ERRED IN CONVICTING HIM OF AGGRAVATED ROBBERY WITH A GUN SPECIFICATION AS SUCH CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 {¶ 4} This case stems from a party that occurred on February 1, 2006 and continued into the early morning hours of February 2, 2006 at the home of Arthur Jordan. Williamson attended this party, as well as Arthur Jordan and James Davison, Arthur Jordan's son. There was drinking, gambling, and smoking of marijuana at this party in pre-celebration of the 2006 Super Bowl. The state presented evidence that at the conclusion of the party Williamson went upstairs to the restroom. When Williamson did not return from the restroom in a reasonable time, Jordan went upstairs to check on him. Arthur Jordan found Appellant rummaging around in his son's room. Jordan and Appellant then got into an argument during which Appellant pulled out two guns and stated that he was going to rob Jordan. A short time later, Charles Brown walked into Jordan's home to borrow a cigarette and saw Appellant standing with two guns in his hands. Arthur Jordan then left with Charles Brown to call the police. Appellant then robbed James Davison at gunpoint of his monthly allowance he had received earlier that day, approximately one hundred and seventy five dollars. James immediately called his father at Charles Brown's house to report the robbery. Arthur Jordan then returned home and talked with his son. Jordan wanted to hurt Williamson for what he did to his son; however, Jordan waited until he calmed down to call the police later that morning. After the police took the statements of Arthur Jordan and James Davison, they *Page 3 
conducted a consented search of Williamson's home, and Williamson was arrested. The state presented no evidence that the guns or the money was recovered during the search. In addition, the State presented evidence that Appellant's brother did not attend the party.
 {¶ 5} The defense presented the testimony of Tyreise Williamson, Appellant's brother, as its sole witness. Tyreise testified that he and his brother were invited to the party by Arthur Jordan. Appellant and his brother were later forced to leave the party around 12:30 or 1:00 in the morning of February 2, 2006 when Arthur Jordan kicked them out because he was losing money to Appellant. Tyreise and Appellant then went to their home where the two played video games before retiring to bed. Tyreise testified that Appellant did not threaten anyone, he did not display a weapon, and that Appellant was at home during the time the robbery was allegedly committed.
 {¶ 6} In his sole assignment of error, Williamson challenges the legal sufficiency of the conviction, arguing that the evidence submitted at trial was insufficient to convince the average person that the Appellant is guilty of the aggravated robbery. In addition, Williamson contends that the conviction is against the manifest weight of the evidence based upon numerous discrepancies in the testimony presented at trial and the credibility of the state's witnesses. Upon review of the record, however, we disagree with Williamson's assertions.
 {¶ 7} "`"[Sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541, citing Black's Law Dictionary (6th *Page 4 
Ed.1990) 1433. The relevant inquiry when examining an appeal based on the sufficiency of the evidence is whether, after viewing the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Dennis (1997), 79 Ohio St.3d 421, 430,683 N.E.2d 1096. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 8} The essential elements of aggravated robbery are outlined as follows in the Ohio Revised Code: "No person, in attempting or committing a theft offense, * * * or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 9} "Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." R.C. 2911.01(A)(1).
 {¶ 10} The state presented testimony from James Davison, the victim, that was adequate to establish the essential elements of aggravated robbery. Davison testified that Williamson "had already came in with his black — all black gun out and said: `Give me your stash and your Daddy's stash.'" (Tr. at 16.) Davison further testified that he then gave Williamson his money. (Id. at 17.) This testimony viewed in a light most favorable to the state proves the essential elements of aggravated robbery beyond a reasonable doubt.
 {¶ 11} We also find that Appellant's manifest weight argument is without merit. When a conviction is challenged on appeal as being against the manifest weight of the evidence, an appellate court reviews the entire record, "`weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in *Page 5 
resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered .'" Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215,485 N.E.2d 717. Essentially, a reviewing court "sits as a `thirteenth juror' and makes its own independent review of the evidence and inferences derived therefrom, and assesses and weighs the credibility of each witness's testimony." Hagel, Ohio's Criminal Practice and Procedure (2006-07) 796, Section 41.207. However, "[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness. Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, 1997 WL 476684, at *4. Only in exceptional circumstances should a judgment be reversed as being against the manifest weight of the evidence. State v. Frost, 164 Ohio App.3d 61, 2005-Ohio-5510,841 N.E.2d 336, at ¶ 16 (citation omitted).
 {¶ 12} Appellant attacks the credibility of the state's witnesses based upon several discrepancies in their testimony and the behavior of the witnesses. One of these discrepancies concerns testimony as to who was at the party. James Davison testified *Page 6 
that there were more individuals at the party than his father. Davison also testified that a female was at the party, while his father testified that there was never a female at the party. Another of these discrepancies concerns whether Charles Brown went into Arthur Jordan's kitchen. James Davison testified that Charles Brown walked into the apartment and went directly into the kitchen, while Brown testified that he never went into the kitchen. The third discrepancy listed by the Appellant concerns when Arthur Jordan got the call from his son that he was just robbed by the Appellant. Arthur Jordan testified that the phone was already ringing before he and Charles Brown entered Charles' residence. Charles Brown testified that the phone did not ring until the two men were already in the house a short time. The final discrepancy listed by Appellant concerns who closed and opened the door when Charles Brown entered Arthur Jordan's residence. James Davison testified that Arthur Jordan opened and closed the door. Arthur Jordan testified that the Appellant closed the door. Charles Brown testified that he opened and closed the door himself.
 {¶ 13} "[Discrepancies in the witness' testimony, or between his or her testimony and that of others, if there are any, does not necessarily mean that you should disbelieve that witness, as people commonly forget facts or recollect them erroneously after the passage of time. In considering a discrepancy in a witness [sic] testimony, you should consider whether such discrepancy concerns an important fact or a trivial fact." State v. Cunningham, 105 Ohio St.3d 197, 2004-Ohio-7007,824 N.E.2d 504, at ¶ 54. In the present matter, the discrepancies raised by Appellant concern trivial facts and as such do not lessen the credibility of the witnesses. After review of the record, we do not find that the jury lost its way and created a manifest miscarriage of justice because it *Page 7 
deemed these discrepancies to be trivial.
 {¶ 14} Additionally, Williamson contends that because Arthur Jordan waited until later in the morning of February 2, 2006 to call the police and because he left his son alone in his house with an alleged gunman, his version of events prior to the robbery is not credible. Arthur Jordan testified at trial that he left his son "to go and call the police `cause I didn't think he'd harm my son'". (Tr. At 83.) Furthermore, Arthur Jordan testified that he at first wanted to hurt Williamson, that his son begged him not to, that he then waited for his son to go to sleep so that he could then go out and find Williamson to hurt him, and that he eventually calmed down and at that point called the police. (Id at 86-88.) Likewise, Appellant questions the credibility of James Davison because there was testimony by the defense witness, Tyreise Williamson, at trial that the minor was drinking alcohol and smoking marijuana at the party. Both James Davison and Arthur Jordan testified at trial that James did not drink that evening. (Id at 36, 130.) "The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of facts, the jury here, to resolve." State v. Reese, Montgomery App. No. 20246, 2004-Ohio-6674, at ¶ 22. (citation omitted). We do not find the jury lost its way simply because it chose to believe the testimony of Arthur Jordan about why he waited to call the police and why he left his son in the apartment with Williamson. Moreover, we do not find the jury lost its way because it chose to believe the testimony of James Davison and Arthur Jordan over that of Tyreise Williamson about whether the minor was smoking and drinking during the party.
 {¶ 15} Although Appellant argues that Arthur Jordan's testimony was not credible because he had a motive to harm him because he lost money to him while gambling, we *Page 8 
can discern no motive for Charles Brown to falsely testify that Appellant was holding two guns just prior to the alleged robbery of James Davison.
 {¶ 16} The judgment of the trial court is based on sufficient evidence and is not against the manifest weight of the evidence.
 {¶ 17} The assignment of error is overruled.
 {¶ 18} Judgment of the trial court is Affirmed.
 FAIN and DONOVAN, JJ., concur. *Page 1