OPINION
{¶ 1} Defendant-Appellant, Adrian D. Maddox, appeals from the judgment of the Lima Municipal Court sentencing him to a one hundred eighty day jail term, suspended in its entirety upon the condition that he refrain from contacting or threatening his brother, Kevin Maddox, or his brother's girlfriend, Tamara Allen. On appeal, Adrian argues that the trial court erred in convicting him as his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. Finding that there was sufficient evidence to support a conviction, and that his conviction was not against the manifest weight of the evidence, we affirm the judgment of the trial court.
 {¶ 2} In October 2007, Adrian was arrested and charged by complaint with aggravated menacing in violation of R.C. 2903.21(A), a misdemeanor of the first degree. The complaint arose from an incident whereby Adrian went into the home where he and his brother resided, brandished a handgun, and threatened to shoot his brother and his brother's girlfriend if they did not immediately leave. Subsequently, Adrian entered a plea of not guilty to the charge. Thereafter, the case proceeded to a bench trial, at which the following testimony was adduced.
 {¶ 3} Kevin testified that he and his two brothers, Adrian and Jeffrey Maddox, all live together in the same house; that the house was their mother's and they have been living there since she passed away; that, when he awoke one *Page 3 
morning and went downstairs, Adrian was standing there ready to confront him; that Adrian began arguing with him that he had caused Adrian to fail an exam at school; that, after ignoring Adrian and going into the kitchen, he turned around and saw him standing in the living room with a gun; that Adrian continued to complain to him about his problems; and, that he stayed focused on the gun because he knew it did not have a safety on it. Kevin continued that Adrian threatened to "blow my head off (trial tr., p. 5); that Adrian then went upstairs to the bedroom and threatened Kevin's girlfriend, Tammy, with the gun, stating that he was "going to blow her brains out" (trial tr., p. 5-6); that, when he realized how angry Adrian was, he called 9-1-1; that, while he was on the phone with the 9-1-1 dispatcher, Tammy came down the stairs to leave; and, that as she came down the stairs, Adrian threatened her with the gun again.
 {¶ 4} Kevin further testified that he and Tammy left the house immediately due to Adrian's threats; that, as they left, he was still in his "bathrobe and stocking feet" (trial tr., p. 6); that he believed he was going to be harmed by Adrian; and, that around six to eight police officers arrived within five minutes of his call to 9-1-1. Kevin continued that the officers arrested Adrian but did not find the gun on him or anywhere around the house; that the gun he saw in Adrian's hands during the confrontation was his mother's gun; that he knew the gun was loaded because she always kept it loaded; that he had not seen the gun since his *Page 4 
mother passed away in December 2006; that after his mother died, Adrian told him he had the gun, but he did not know where Adrian kept it; that, several days after the incident, Jeffrey found the gun in a box on the porch of the house; and, that, upon discovering the gun, they called the police and Patrolman Randy Kohli came to the house and retrieved the gun.
 {¶ 5} Tammy Allen, Kevin's girlfriend, testified that she was sleeping in the house the morning of the incident; that she woke up around 5:00 in the morning to the sound of men's voices arguing; that she heard Adrian yelling her name and Kevin saying "leave her alone" (trial tr., p. 27); that Kevin came up the stairs and told her she did not have to leave; that she told him she was going to leave so he and Adrian could deal with their situation; that Kevin then left the room, she turned to grab her cell phone, and when she turned back, Adrian opened up the door, held a gun to her head, and told her to not come back to the house or he would kill her; that she could not recall the description of the gun because it was dark in the room and because she was scared and tried not to look at it; that Adrian then left the room and she prepared to go downstairs to leave; and, that, as she was getting ready to leave, Kevin was on the phone with the police.
 {¶ 6} Tammy further testified that Kevin then walked her down the stairs; that, as they were coming down the stairs, Adrian again pointed a gun at them and yelled at them to never come back to the house or he would kill them; that, as they *Page 5 
were walking out of the house, two police officers were already parked to the left side of the house; and, that more police officers arrived on the scene, surrounded the house, arrested Adrian, and searched the house for about twenty minutes.
 {¶ 7} Adrian testified that he had an encounter with Kevin on this particular morning; that he had become upset with Kevin because he thought he was having to pay more than his fair share of the bills, and because Kevin would not take him to his midterm one evening and would not pick him up after the exam; that the conversation he had with Kevin on this particular morning escalated into a confrontation, but that the confrontation was purely verbal in nature; that, as he was complaining to Kevin about his situation at school, he told Kevin that if he thought it was funny, he would go to Kevin's employer and tell them that he was stealing things; that, during the confrontation, he never pointed a gun at either Kevin or Tammy nor threatened to kill them; that Kevin called the police and told them that he had a gun; and, that, when the police arrived at the house, they searched him and asked him about the gun, but he responded that he "didn't know anything about a gun." (Trial Tr., p. 44).
 {¶ 8} After the conclusion of the State's presentation of evidence, Adrian made a motion for acquittal pursuant to Crim. R. 29(A). The trial judge denied the motion, and Adrian did not renew the motion at the conclusion of all the evidence. Subsequently, the trial judge found Adrian guilty of aggravated menacing. *Page 6 
 {¶ 9} Thereafter, the trial judge sentenced Adrian to a one hundred eighty day jail term, suspended in its entirety upon the condition that he remain away from and not threaten Kevin or Tammy.
 {¶ 10} In November 2007, Adrian filed a notice of appeal, and in May 2008, this Court dismissed the appeal, finding that the judgment was not a final appealable order pursuant to R.C. 2505.02, as the "form" judgment entry failed to reflect the specific offense for which Adrian was convicted and sentenced.
 {¶ 11} In June, 2008, the trial court resentenced Adrian and filed a new judgment entry. Thereafter, Adrian filed a timely notice of appeal, presenting the following assignment of error for our review.
 THE CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 12} In his sole assignment of error, Adrian argues that there is insufficient evidence to support his conviction and that his conviction is against the manifest weight of the evidence. Specifically, Adrian asserts that the evidence fails to establish that Kevin feared Adrian would inflict serious physical harm upon him. We disagree.
 A. Sufficiency of the Evidence {¶ 13} When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to *Page 7 
the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Monroe, 105 Ohio St.3d 384, 392, 2005-Ohio-2282, citingState v. Jenks (1981), 61 Ohio St.3d 259, superseded by state constitutional amendment on other grounds as stated in State v.Smith, 80 Ohio St.3d 89, 1997-Ohio-355. Sufficiency is a test of adequacy, State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, and the question of whether evidence is sufficient to sustain a verdict is one of law. State v. Robinson (1955), 162 Ohio St. 486, superseded by state constitutional amendment on other grounds as stated inSmith, supra.
 {¶ 14} To preserve a claim for sufficiency of the evidence, a Crim. R. 29(A) motion must be made at the conclusion of all evidence. State v.Alvarado, 3d Dist. No. 12-07-14, 2008-Ohio-4411, ¶ 24. Failure to make a Crim. R. 29(A) motion waives all but plain error. Id. Crim. R. 52(B). A plain error under Crim. R. 52(B) must be an "obvious" defect in the trial proceedings and must have affected "substantial rights." State v.Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. Plain error exists only where it can be said that "but for the error, the outcome of the trial would clearly have been otherwise." State v. Biros, 78 Ohio St.3d 426,431, 1997-Ohio-204; see State v. Johnson, 3d Dist. No. 2-98-39, 1999-Ohio-825. *Page 8 
 {¶ 15} The elements of aggravated menacing are found in R.C. 2903.21(A), which provides as follows:
 No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family.
 {¶ 16} In the case at bar, Kevin testified that Adrian pointed a gun at him and threatened to kill him when he came downstairs in the early morning; that he called 9-1-1 because he could tell that Adrian was very upset; and, that he feared Adrian would harm him. Furthermore, Tammy testified that she awoke to Adrian and Kevin arguing early in the morning; that Kevin came up the stairs, pointed a gun at her, and threatened to kill her; and, that as she and Kevin were walking down the stairs to leave the house, Adrian again pointed the gun at them and threatened to kill them.
 {¶ 17} Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found sufficient evidence to establish all elements of the crime of aggravated menacing beyond a reasonable doubt. Adrian's act of pointing a gun at Kevin was an act of knowingly causing another to fear serious physical harm, and Kevin's testimony that he was in fear of being harmed established his subjective belief that Adrian was going to cause serious physical harm to him. *Page 9 
 {¶ 18} Accordingly, we find that the trial court did not commit plain error by convicting Adrian, as sufficient evidence was presented to establish all the elements of aggravated menacing.
 B. Manifest Weight of the Evidence {¶ 19} When an appellate court analyzes a conviction for a manifest weight error, it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, 78 Ohio St.3d at 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 20} In this case, Kevin and Tammy both testified to Adrian's pointing a gun at them and threatening to kill them on more than one occasion. Furthermore, Kevin testified that he was in fear of being harmed; that he called 9-1-1 when he realized how upset Adrian was; and, that he immediately left the house while still in his robe and stocking feet. Kevin also stated that, while the police did not find a gun when arresting Adrian and after searching around the house, his brother Jeffrey found the gun several days later in a box on the porch. *Page 10 
 {¶ 21} On the other hand, Adrian testified that, while he did have an argument that escalated into a confrontation with Kevin, he never pointed a gun at Kevin, possessed a gun during the incident, or threatened to harm Kevin. Additionally, no police officers testified at trial, nor was the gun that was found at the house several days after the incident ever introduced into evidence.
 {¶ 22} While the State could have introduced more evidence to bolster its case, including the gun that was recovered from the house, the testimony of police officers in regards to the incident, and more testimony on Kevin's demeanor and subjective beliefs at the time of, and shortly after, the incident, we find there was a profusion of evidence from which the trial judge could conclude that Adrian committed the crime of aggravated menacing. While Adrian did present evidence that he neither possessed a gun or threatened Kevin, it is clear that the trial judge found the combined testimony of Kevin and Tammy to be more credible. As such, we find that Adrian's conviction is not against the manifest weight of the evidence.
 {¶ 23} Accordingly, we overrule Adrian's assignment of error.
 {¶ 24} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 PRESTON and WILLAMOWSKI, JJ., concur. *Page 1