[Cite as *State v. Burgett*, 2009-Ohio-5278.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                   CASE NO. 9-09-14

    v.

ANTHONY N. BURGETT,               O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 08-CR-0358

Judgment Affirmed

Date of Decision:  October 5, 2009

APPEARANCES:

    *Kevin P. Collins* for Appellant

    *Gregory A. Perry* for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Anthony Burgett, appeals the judgment of the Marion County Court of Common Pleas convicting him of seven counts each of unlawful sexual conduct with a minor and sexual battery, and sentencing him to an aggregate prison term of 22 ½ years. On appeal, Burgett argues that insufficient evidence was presented to support his convictions for sexual battery; that his convictions for unlawful sexual conduct with a minor with respect to one victim were against the manifest weight of the evidence; and, that the trial court committed plain error in admitting into evidence a DVD recording of his interview with and confession to the police, as his confession was involuntary due to the deceptive and coercive nature of the interrogation. Based on the following, we affirm the judgment of the trial court.

{¶2} In September 2008, the Marion County Grand Jury indicted Burgett on seven counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A)[1], felonies of the fourth degree; seven counts of sexual battery in violation of R.C. 2907.03(A)(5), felonies of the third degree; and, two counts of rape in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree. The sexual battery and unlawful sexual conduct counts in the indictment arose from

---

[1] We note that the seven counts in the indictment for violations of R.C. 2907.04, along with the jury verdict forms and sentencing entry, were incorrectly labeled as the offense of corruption of a minor. The statute was revised in 1996, and the name of the offense was changed to unlawful sexual conduct with a minor.

allegations that Burgett engaged in sexual intercourse with and fondled his then girlfriend's two minor daughters, R.D. and M.B., now his step-daughters, from 1997 to 1999. The rape counts in the indictment arose from allegations that Burgett engaged in sexual conduct with his three-year-old step-granddaughter, S.D., in 2008. Subsequently, Burgett entered not guilty pleas to all counts in the indictment.

{¶3} In December 2008, the matter proceeded to trial, at which Darlene Schoonard, the coordinator of the sexual assault program at Marion General Hospital, testified that she conducted a sexual assault exam on S.D. in August 2008; that S.D. was three years old at the time of the exam; that S.D. told her that her "Papa" either licked or kicked her vagina, but she was not able to understand her exact words; and, that she did not find any signs of trauma after conducting the exam.

{¶4} R.D. testified that she lives with her mother, Angela Burgett, her mother's children, her daughter, and her brother; that her sister, M.B., has a daughter, S.D.; that she is currently twenty-four years old; that Burgett moved into the residence where she, M.B., her mother, and others were living when she was ten years old; that Burgett was her mother's boyfriend at the time he moved into the home; that, when Burgett first began living there, she "felt alright" about him (trial tr., vol. II, p. 147); that Burgett treated her and her sister like his own children, and they acted like a family; that Burgett would not discipline her and

her sister, but would allow their mother to administer the discipline; that she loved Burgett "almost like a dad" (Id. at 148); that she did not talk to him about school, but that they would celebrate birthdays together; that Burgett worked and gave her mother money to purchase groceries and pay bills; and, that Burgett drank heavily.

{¶5} R.D. further testified that, when she was around thirteen or fourteen years old, Burgett began inappropriately touching her, including fondling her breasts and vagina; that he placed his finger into her vagina on three separate occasions; that he engaged in sexual intercourse with her on two occasions; that all of these incidents occurred before she was sixteen; and, that she lived on State Street in Marion, Ohio, when these events occurred.

{¶6} On cross-examination, R.D. testified that Burgett did not try to be her father, and that she lived on State Street when these incidents of sexual abuse occurred, but that she could not remember how old she was when she lived on State Street. However, R.D. also testified that these incidents began when she was thirteen or fourteen years old and continued until she was sixteen years old, and that there was a possibility she could have been sixteen when some of these incidents occurred.

{¶7} On re-direct examination, R.D. again stated that she was thirteen or fourteen when the sexual encounters between her and Burgett began; that she believed she was under the age of sixteen at the time of the incidents; that she was

confident the incidents occurred when she was fourteen or fifteen; and, that the sexual encounters ended when she was sixteen years old.

{¶8} M.B. testified that she currently lives with her mother, her sister, R.D., her brother, and her four children; that she is twenty-five years old; that Burgett began living with their family when she was thirteen or fourteen; that Burgett was her mother's boyfriend at the time, but her mother and Burgett are now married; that he treated her well and made her feel like she was his daughter; that he would give her money and make sure she was behaving, but that he would allow her mother to handle the discipline; that he worked and gave money to her mother; and, that she would characterize the living situation with Burgett as a family.

{¶9} M.B. continued that Burgett started inappropriately touching her when she was around thirteen years old; that he placed his fingers inside her vagina on three or four occasions when she was between the ages of thirteen and sixteen; that she told her mother about the incidents but she took no action; that she moved out of the residence where her mother and Burgett were living when she was eighteen years old; that she subsequently moved back into their home with her children; that Burgett would sometimes watch the children by himself if she went to the grocery store or had an appointment; and, that children's services requested that she take S.D. to the hospital for an exam due to the investigation against Burgett.

{¶10} On cross-examination, M.B. testified that Burgett did not act like her father when he lived with her family; that she did not have a good relationship with him; that Burgett was drunk a lot; and, that the sexual abuse occurred when she was around thirteen or fourteen years old.

{¶11} Patrolman Brian Liston, from the Marion Police Department, testified that he was assigned to investigate Burgett for allegations of sexual abuse based on a report from Marion County Children's Services; that he went to the Burgett residence and spoke with Angela, R.D., S.D., and L.T., M.B.'s five-year-old son; that, based on those conversations, he also interviewed Burgett; that he made a DVD recording of the interview; that, during the interview, he used techniques to make Burgett feel comfortable talking about the sexual abuse, such as making him feel "like every guy does it" (Id. at p. 197); that he also told Burgett he had DNA evidence linking him to the sexual abuse of S.D., which was not true; that Burgett stated that his grandchildren call him "Papa"; and, that Burgett admitted to placing his fingers inside R.D.'s vagina.

{¶12} On cross-examination, Patrolman Liston testified that he also interviewed several other people about the allegations of Burgett's abuse of S.D., and most of those people indicated they did not believe the allegations; that Burgett stated during the interview that he was being falsely accused of sexual abuse of S.D.; that Burgett also told him that he had dropped out of school in the seventh grade, and that he could not read and write well; that Burgett was very

nervous during the interview; that he was much larger than Burgett, as he was five feet, eleven inches tall and weighed two-hundred eighty pounds, and Burgett was around five feet, six inches tall and weighed one-hundred fifty pounds; that, during the interview, he "got a little fired up with [Burgett]" (trial tr., vol. 2, p. 213), but was not trying to scare him; that he became frustrated with Burgett and slammed his papers down on the table; that Burgett expressed to him that he was "scaring him" (Id. at 217); that he lied to Burgett and told him that S.D. stated that she felt his tongue on her; that he also told Burgett he would prosecute him for lying if he did not tell the truth; and, that he told him all of these lies in order to force Burgett to tell the truth.

{¶13} On redirect examination, Patrolman Liston testified that he instructed Burgett that he was permitted to leave the interview at any time, and that Burgett denied having sexual intercourse with S.D., admitted to fondling R.D. and M.B., but denied having sexual intercourse with M.B. During the course of Patrolman Liston's testimony, the DVD recording of his interview with Burgett was played to the jury.

{¶14} At the close of the State's case-in-chief, Burgett made a Crim.R. 29 motion for judgment of acquittal on all counts of the indictment, but specifically argued that insufficient evidence was presented on the sexual battery charges in counts eight through fourteen of the indictment to establish that he was the parent

or guardian, or was in loco parentis, of M.B. and R.D. Subsequently, the trial court overruled the motion.

{¶15} Burgett then testified that he had sexual intercourse with R.D. on two occasions; that he also "fondled with [sic] her twice, but * * * never put [his] finger in her" (Id. at p. 237); that she was fourteen or fifteen years old when this occurred; that he also touched M.B.'s breasts when she was around sixteen years old, but he did not insert his fingers into her vagina; that he never inappropriately touched his grandchildren; that he never put his mouth on S.D.'s vagina; that he did not try to be a father to R.D. or M.B.; that, if he tried to tell them to do something and their mother did not want them to do it, he would "get jumped on" (Id. at 238); that he gave Angela money he received from Social Security and his job because he was living with her; that Angela, R.D., and M.D. were also all receiving Social Security benefits; that, while he was living at the residence, R.D. and M.D.'s father also lived there with his girlfriend; that, during his interview with Patrolman Liston, he was scared and worried that "if [he] didn't tell this guy what he wanted to hear * * *, [he] was gonna walk out that door like he said [he] could, [and] have [him] arrested right there" (Id. at 241); that Patrolman Liston kept "pounding, pounding, pounding in [his] head, so [he] said heck with it, [he's] gonna just tell him what he wanted to hear" (Id.); and, that he told Patrolman Liston that he placed his finger in S.D.'s vagina, "to get him off [his] back." (Id. at 242).

{¶16} On cross-examination, Burgett testified that R.D. and M.B. were about eleven or twelve when he moved into the residence with them and Angela; that he was living in and out of the house with them, as he spent time in a halfway house, and he and Angela would sometimes fight, and he would leave for three or four months and return; that he married Angela in 2000; that he has had contact with the police since he was eighteen years old, and has spoken with them on many occasions; and, that he has had approximately one thousand contacts with the police.

{¶17} Subsequently, the jury found Burgett guilty on all counts of unlawful sexual conduct with a minor and sexual battery, but found him not guilty on the two counts of rape.

{¶18} In January 2009, the trial court sentenced Burgett to a total prison term of 22 ½ years.

{¶19} It is from his conviction and sentence that Burgett appeals, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE RECORD CONTAINS INSUFFICIENT EVIDENCE TO SUPPORT DEFENDANT-APPELLANT'S CONVICTIONS FOR SEXUAL BATTERY.**

*Assignment of Error No. II*

**DEFENDANT-APPELLANT'S CONVICTIONS FOR UNLAWFUL SEXUAL CONDUCT WITH A MINOR WITH**

**REGARD TO [R.D.] ARE CONTRARY TO THE MANIFEST WEIGHT OF EVIDENCE.**

*Assignment of Error No. III*

**THE TRIAL COURT COMMITTED PLAIN ERROR IN ALLOWING THE ADMISSION OF THE INTERVIEW OF DEFENDANT-APPELLANT.**

*Assignment of Error No. I*

**{¶20}** In his first assignment of error, Burgett argues that his convictions for sexual battery were against the sufficiency of the evidence. Specifically, he contends that the evidence presented at trial was insufficient to establish that he was in loco parentis of both R.D. and M.B., as was required for a conviction pursuant to R.C. 2907.03(A)(5). We disagree.

**{¶21}** When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe*, 105 Ohio St.3d 384, 392, 2005-Ohio-2282, citing *State v. Jenks* (1981), 61 Ohio St.3d 259, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 1997-Ohio-355. Sufficiency is a test of adequacy, *State v. Henry*, 3d Dist. No. 13-08-10, 2009-Ohio-3535, ¶20, and the question of whether evidence is sufficient to sustain a verdict is one of law. *State v. Robinson*

(1955), 162 Ohio St. 486, superseded by state constitutional amendment on other grounds as stated in *Smith*, supra.

**{¶22}** R.C. 2907.03(A)(5) sets forth the offense of sexual battery as follows:

> **(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:**
> **\* \* \***
> **(5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.**

**{¶23}** "The term 'in loco parentis' means 'charged, factitiously, with a parent's rights, duties, and responsibilities.'" *State v. Noggle,* 67 Ohio St.3d 31, 33, 1993-Ohio-189, quoting Black's Law Dictionary (6 Ed. 1990) 787. A person who stands in loco parentis to a child has assumed similar duties to that of a guardian or custodian, only not through legal proceedings. Id. In order to meet the definition of in loco parentis, a person must not only assume a dominant parental role, but must also be relied upon by the child for support. *State v. Stout*, 3d Dist. No. 8-07-12, 2008-Ohio-161, ¶15, citing *Noggle*, 67 Ohio St.3d 31. Furthermore, "[t]he key factors of an in loco parentis relationship have been delineated as 'the intentional assumption of obligations incidental to the parental relationship, especially support and maintenance.'" *Evans v. The Ohio State Univ.* (1996), 112 Ohio App.3d 724, 736, quoting *Nova Univ., Inc. v. Wagner* (Fl.1986), 491 So.2d 1116, 1118, fn. 2.

{¶24} In the case at bar, Burgett made a Crim.R 29 motion for judgment of acquittal after the State's presentation of evidence, arguing that the evidence failed to establish he was the parent or guardian, or was in loco parentis of M.B. and R.D. Consequently, Burgett has preserved this error on appeal. *State v. Maddox*, 3d Dist. No. 1-08-37, 2008-Ohio-5831, ¶14.

{¶25} The testimony presented at trial established that Burgett began living with Angela, R.D., and M.D. right around the time R.D. and M.D. entered their teenage years, and that he lived with them, although off and on, for several years. R.D. testified that Burgett treated her and M.B. like his own daughters; that she, M.B., her mother, and Burgett acted like a family; that she loved Burgett "almost like a Dad" (trial tr., vol. 2, p. 148); and, that Burgett would provide money to buy groceries and pay the bills. Additionally, M.B. testified that Burgett treated her like his own daughter; that he would give her money; that he would make sure she was behaving, although he did not discipline her; and, that she would characterize the living situation with Burgett as that of a family.

{¶26} Although there was also testimony from R.D. and M.B. that Burgett did not try to be their father and did not talk to them about school, and there was testimony from Burgett that he did not try to be their father, and that other people lived in the residence with them, including R.D. and M.B.'s father and his girlfriend, it is clear, viewing the evidence in a light most favorable to the prosecution, that a rational jury could have found sufficient evidence that Burgett

occupied an in loco parentis status to R.D. and M.B., especially considering that he provided financial support to the family and treated the girls like his own daughters.

{¶27} Accordingly, we overrule Burgett's first assignment of error.

*Assignment of Error No. II*

{¶28} In his second assignment of error, Burgett argues that his convictions for unlawful sexual conduct with a minor with regard to R.D. are contrary to the manifest weight of the evidence. Specifically, Burgett contends that the State failed to demonstrate beyond a reasonable doubt that R.D. was less than sixteen years of age at the time of the sexual encounters, as required for a conviction under R.C. 2907.04(A). We disagree.

{¶29} When an appellate court analyzes a conviction under the manifest weight standard, it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martin* (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.

{¶30} R.C. 2907.04(A) sets forth the offense of unlawful sexual conduct with a minor as follows:

**No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.**

Accordingly, as set forth under the statute, the evidence must establish that the victim was between the ages of thirteen and sixteen at the time the sexual conduct occurred in order to support a conviction for unlawful sexual conduct with a minor.

{¶31} Here, R.D. testified on direct examination that Burgett began fondling her when she was around twelve or thirteen years old; that he engaged in sexual intercourse with her and digitally penetrated her before she turned sixteen years old; and, that she lived on State Street when these incidents occurred. On cross-examination, R.D. stated that there was a possibility some of the incidents of sexual abuse occurred after she turned sixteen years old, and that she was not sure of her age when she lived on State Street. However, on redirect examination, R.D. testified that she believed she was under the age of sixteen at the time of the incidents; that she was confident the incidents occurred when she was fourteen or fifteen years old; and, that the sexual abuse ended when she was sixteen years old.

{¶32} Furthermore, Burgett testified that he engaged in sexual intercourse with R.D. on two separate occasions and also fondled her twice when she was around fourteen or fifteen years old, although he denied ever inserting his finger into her vagina.

**{¶33}** Based upon this testimony presented at trial, we find that the jury did not clearly loose its way in finding that R.D. was less than sixteen years of age at the time of the sexual conduct between her and Burgett. First, Burgett testified that he engaged in sexual intercourse and fondled R.D. when she was fourteen or fifteen years old. Second, although R.D. did express some doubt in her testimony as to whether any of the sexual conduct occurred when she was sixteen years old, including her testimony that there was a possibility some of the sexual encounters could have occurred when she was sixteen, R.D. affirmatively stated on multiple occasions that the sexual conduct occurred before the age of sixteen. It is easy for a witness to forget some of the facts of a traumatic incident that occurred several years prior, *State v. Williamson*, 2nd Dist. No. 21709, 2007-Ohio-3820, ¶13, and we find that the small doubts expressed by R.D. about her age at the time of every sexual incident were overshadowed by her continued insistence that she was under the age of sixteen.

**{¶34}** Consequently, we find that Burgett's convictions for unlawful sexual conduct with a minor with regard to R.D. were not against the manifest weight of the evidence on the issue of R.D. being under the age of sixteen.

**{¶35}** Accordingly, we overrule Burgett's second assignment of error.

*Assignment of Error No. III*

**{¶36}** In his third assignment of error, Burgett argues that the trial court committed plain error in admitting into evidence the DVD recording of his interview with and confession to Patrolman Liston. Specifically, Burgett asserts that the DVD should not have been admitted because his confession was involuntary due to the intimidation and deception engaged in by Patrolman Liston during the interview.

**{¶37}** We initially note that Burgett failed to make a motion to suppress the DVD at trial. Consequently, he has waived all but plain error. See *State v. Loza*, 12th Dist. No. CA 91-11-198, 1993 WL 120028.

**{¶38}** In order to have plain error under Crim.R. 52(B), there must be an error, the error must be an "obvious" defect in the trial proceedings, and the error must have affected "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. Plain error exists only in the event that it can be said that "but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros*, 78 Ohio St.3d 426, 431, 1997-Ohio-204; see *State v. Johnson*, 3d Dist. No. 2-98-39, 1999-Ohio-825.

**{¶39}** In determining whether a pretrial statement is involuntary, a court "'should consider the totality of the circumstances, including the age, mentality,

and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" *State v. Frazier*, 115 Ohio St.3d 139, 154, 2007-Ohio-5048, quoting *State v. Mason*, 82 Ohio St.3d 144, 154, 1998-Ohio-370. See, also, *In re K.W.*, 3d Dist. No. 9-08-57, 2009-Ohio-3152, ¶12. Moreover, "[t]he use of an 'inherently coercive tactic' during interrogation is a prerequisite to a finding of involuntariness. Such tactics include, *e.g.,* physical abuse, threats, or deprivation of food, medical treatment, or sleep." *State v. Cooey* (1989), 46 Ohio St.3d 20, 28, certiorari denied (1991), 499 U.S. 954, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 1997-Ohio-355. In sum, to suppress a confession, the totality of the circumstances must indicate that the defendant's "'will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct.'" *State v. Inskeep*, 3d Dist. No. 8-04-36, 2005-Ohio-6410, ¶13, quoting *State v. Otte*, 74 Ohio St.3d 555, 562, 1996-Ohio-108.

{¶40} Here, the DVD recording of Burgett's interview with Patrolman Liston shows Burgett confessing to engaging in sexual intercourse with R.D., placing his finger inside both R.D. and M.B.'s vagina, and fondling R.D. and M.B.'s breasts. Additionally, Burgett states these incidents of sexual encounters with R.D. and M.B. occurred when they were somewhere between thirteen and sixteen years of age, as he could not remember the exact dates.

**{¶41}** After reviewing the DVD recording of the interview and reviewing the trial record detailing the conduct of Patrolman Liston during the interview, we do not find that Patrolman Liston engaged in any "inherently coercive tactic" *Cooey,* 46 Ohio St.3d at 28, during the interview such that Burgett's "will was overborne and his capacity for self-determination * * * critically impaired." *Inskeep*, 2005-Ohio-6410, at ¶13.

**{¶42}** Although Patrolman Liston may have exaggerated the evidence and threatened to criminally charge Burgett if he did not tell the truth, we find these to be permissible interrogation techniques that do not rise to the level of coercive tactics such as physical abuse, threats, or sleep deprivation. During the interview, Patrolman Liston was stern, yet generally kind to Burgett. He did not yell at him, intimidate him with his superior size, or threaten him with physical abuse. Patrolman Liston did ask Burgett the same questions multiple times and told him on several occasions that he thought he was lying, but he also informed Burgett that he was not under arrest and was free to walk out of the interview at any time. Furthermore, Burgett, although not highly educated, testified to multiple past experiences with law enforcement and cannot be said to be ignorant of police interrogation techniques, or of the consequences of admitting to a crime or of being untruthful to a law enforcement officer. Consequently, we find that Burgett's confession was voluntary and properly admissible into evidence.

**{¶43}** Accordingly, we overrule Burgett's third assignment of error.

**{¶44}** Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J. and SHAW, J., concur.**

**/jnc**