[Cite as *In re R.B.*, 2020-Ohio-5134.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
ALLEN COUNTY

IN RE:

   R.B.,                                    CASE NO.  1-20-05

ADJUDICATED DEPENDENT CHILD.

                                           O P I N I O N

[CARRIE B. - APPELLANT]

Appeal from Allen County Common Pleas Court
Juvenile Division
Trial Court No. 2019 JG 36391

Judgment Affirmed

Date of Decision:   November 2, 2020

APPEARANCES:

   *Shannon A. Hiler fka McAlister* for Appellant

**SHAW, P.J.**

{¶1} Appellant, Carrie B. ("Carrie"), brings this appeal from the December 19, 2019 judgment of the Allen County Common Pleas Court, Juvenile Division, declining her request to be joined and intervene as a third party in the matter of the Adjudicated Dependent minor child, R.B. On appeal, Carrie argues that the trial court erred by denying her motion to intervene as a third party.

*Background*

{¶2} R.B. was born in August of 2019. Her parents are Amber C. and Devin[1] B. Amber and Devin did not live together. Carrie is Devin's mother and paternal grandmother of R.B.

{¶3} On September 24, 2019, a complaint was filed alleging that R.B. was a Dependent and Abused Child. The complaint alleged that R.B. tested positive for THC at birth, that Amber admitted to the continued use of marijuana, that Amber was unable to care for R.B., and that Amber had lost custody of two other children in Kentucky through children services.

{¶4} On September 30, 2019, a shelter care hearing was held wherein findings of fact were made by the trial court. In addition to Amber's drug issues, and the issues related to Amber losing custody of two other children listed in the

---

[1] The first name of R.B.'s father is spelled differently at various points in the record, sometimes "Devon" and other times "Devin." In his own affidavit of indigency his name is listed as "Devin" thus we will use this spelling.

complaint, findings of fact were made that Amber had difficulty paying her rent, that she was unable to maintain employment, that she refused agency assistance for daycare, and that she had a prior conviction in Kentucky for permitting minors to use illegal drugs. Further, since the complaint had been filed, R.B. had been taken to the emergency room with a skull fracture and bruising on her legs and back as well as other injuries. Amber alleged the injuries were sustained when R.B. fell out of bed.

{¶5} The trial court determined that there was probable cause to believe that R.B. was in immediate danger from her surroundings and that removal was necessary to prevent immediate or threatened physical or emotional harm. In addition, the trial court found that there was probable cause to believe that the conduct, conditions, or surroundings of R.B. were endangering her health, welfare, or safety. It was determined that the continued residence of R.B. in her home would be contrary to her best interests. R.B. was then placed in the temporary custody of Carrie, her paternal grandmother, in lieu of shelter care pending adjudication and disposition.

{¶6} An amended complaint was filed October 2, 2019, adding abuse allegations related to R.B.'s skull fracture and bruising. A doctor had informed the children's services agency that the injuries were inconsistent with how Amber stated that they occurred.

{¶7} On October 18, 2019, a case plan was filed with the permanency goal of reunifying R.B. with her parents, Amber and Devin.

{¶8} On October 21, 2019, Carrie filed a "Motion to be joined and intervene as a third party." She argued that R.B. had been in her care since the shelter care hearing, that she wished to be granted legal custody of R.B., and that such an allocation would be in R.B.'s best interest. Further, she alleged that Amber was unfit and unable to provide for the minor child, and that Devin, her son, was not in a position to care for the child on a full-time basis. On that same date Carrie also filed a motion for legal custody of R.B., and a motion for visitation in the event that her motion for legal custody was not granted.

{¶9} On October 21, 2019, an adjudicatory hearing and dispositional hearing was held before a magistrate. At the hearing the parties indicated that they had reached an agreement, which was read into the record, wherein R.B. was found to be a dependent child pursuant to R.C. 2151.04(C) and R.C. 2151.04(D), and the abuse allegation was dismissed. For disposition R.B. was placed in the temporary custody of Carrie, "a suitable member of the child's extended family." (Doc. No. 47). Both parents were in agreement with R.B. being placed in Carrie's temporary custody. That order would terminate on September 23, 2020, unless a motion to terminate, modify, or extend was filed with the trial court by August 23, 2020. On

December 2, 2019, the trial court filed an entry adopting the magistrate's decision with regard to adjudication and disposition.

{¶10} On November 1, 2019, a GAL report was filed. The report stated, *inter alia*, that Amber desired to have R.B. returned to her care and Devin expressed his desire that R.B. remain with his mother, Carrie, until he could take care of R.B. on his own.

{¶11} On December 13, 2019, a hearing was held on Carrie's motion to be joined as a third party and to intervene. Carrie testified at the hearing that she wanted to take legal custody of R.B., that she believed Amber was unfit, and that Devin was in agreement that Carrie should take legal custody of R.B. The agency and the GAL did not take a position with regard to Carrie's motion to intervene while Devin did support the motion through his attorney. Amber objected to Carrie's intervention in this matter.

{¶12} On December 19, 2019, the trial court filed a judgment entry denying Carrie's motion to intervene. In support of its decision, the trial court cited, at length, a recent decision from this Court, *In re A.T.*, 3d Dist. Crawford Nos. 3-19-07, 3-19-08, 3-19-09, 2019-Ohio-5038, wherein we affirmed the trial court's denial of a grandparent's motion to intervene in a children's services case. In that case this Court analyzed the legal authority and determined that a grandparent cannot

intervene as of right pursuant to Civ.R. 24(A), citing as support *In re Schmidt*, 25 Ohio St.3d 331, 496 N.E.2d 952 (1985).

**{¶13}** We then analyzed whether a grandparent could "permissively" intervene pursuant to Civ.R. 24(B)  The *A.T.* decision determined that for a grandparent to be able to intervene in a permanent custody proceeding, the grandparent has to have stood in loco parentis to the grandchild.  *A.T.* at ¶ 14.  We quoted the legal definition of "in loco parentis" as,

> **" ' "The term 'in loco parentis' means 'charged, factitiously, with a parent's rights, duties, and responsibilities." ' *State v. Noggle*, 67 Ohio St.3d 31, 33, 1993-Ohio-189, 615 N.E.2d 1040, quoting Black's Law Dictionary (6 Ed. 1990) 787. A person who stands in loco parentis to a child has assumed similar duties to that of a guardian or custodian, only not through legal proceedings.  *Id.*"**

*In re A.T.*, ¶ 16, quoting *In re J.B.*, 8th Dist. Cuyahoga No. 103521, 2016-Ohio-5513, ¶ 48, quoting *State v. Burgett*, 3d Dist. Marion No. 9-09-14, 2009-Ohio-5278, ¶ 23.

**{¶14}** The trial court reasoned that although Carrie had temporary custody of R.B., she only assumed care and control of R.B. under the "express legal approval" of the trial court.  (Emphasis sic) (Doc. No. 60).  "She therefore does not have standing as a person who has acted in loco parentis."  (*Id.*)

**{¶15}** Further, the trial court noted our reasoning that a trial court had an obligation to protect a child's parents as parties to the action and permitting intervention would give the parents additional party opponents.  The trial court

-6-

emphasized that the case plan approved and adopted by the trial court had a goal of reunification with the parents and the case plan and services were designed with that goal in mind.

{¶16} Finally, the trial court stressed that the denial of intervention did not preclude the grandparents from being considered for placement as legal custodians of R.B. if reunification was not possible. Carrie now appeals the trial court's denial of her motion to intervene, asserting the following assignment of error for our review.

**Assignment of Error**
**Appellant alleges that the trial court committed error by failing to allow [Carrie] to intervene in this matter and be joined as a third party.**

{¶17} In her assignment of error, Carrie argues that the trial court erred by denying her motion to intervene in this matter. Specifically, she contends that the trial court failed to make sufficient findings to deny her motion, that as temporary custodian of R.B. Carrie had been acting *in loco parentis* contrary to the trial court's finding, that the trial court misapplied *In re A.T.*, 3d Dist. Crawford Nos. 3-19-07, 3-19-08, 3-19-09, 2019-Ohio-5038, and that the trial court had issued inconsistent judgments in other cases regarding whether a grandparent could intervene in a permanent custody proceeding.

Case No. 1-20-05

### Standard of Review

**{¶18}** " 'In reviewing the trial court's denial of a motion to intervene, the proper standard of review is whether the trial court's action constituted an abuse of discretion.' " *In re A.T.*, 3d Dist. Crawford No. 3-19-07, 2019-Ohio-5038, ¶ 12, quoting *Weikle v. Peake*, 3d Dist. Union No. 14-2000-09, 2000 WL 1049310, *4 (July 27, 2000) and *State ex rel. Merrill v. Ohio Dept. of Natural Resources*, 130 Ohio St.3d 30, 2011-Ohio-4612, 955 N.E.2d 935, ¶ 41 (holding that "[w]hether intervention is granted as of right or by permission, the standard of review is whether the trial court abused its discretion in allowing intervention."). To constitute an abuse of discretion, a trial court's decision must be unreasonable, arbitrary, or capricious. *Mousa v. Saad*, 3d Dist. Marion No. 9-18-12, 2019-Ohio-742, ¶ 29; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The abuse of discretion standard is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court. *In re C.M.*, *J.B.*, 4th Dist. Athens Nos. 17CA16, 17CA17, 2017-Ohio-9037, ¶ 40, citing *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, ¶ 34.

### Analysis

**{¶19}** In this case, Carrie is seeking to intervene to become a party. Juvenile Rule 2(Y) defines parties to a juvenile court proceeding. It reads,

> **"Party" means a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or**

-8-

**parents, or if the parent of a child is a child, the parent of that parent, in appropriate cases, the child's custodian,[2] guardian, or guardian ad litem, the state, and any other person specifically designated by the court.**

Juv.R. 2(Y).

{¶20} Carrie does not fall into a category of a person who is automatically made a party to a juvenile court proceeding. However, if an individual is not automatically made a party to a juvenile court proceeding, "[a] juvenile court *may* rely on Civ.R. 24 in exercising its discretion under Juv.R. 2(Y)[,]" to allow a party to intervene. *In re B.L.*, 3d Dist. Allen Nos. 1-15-65, 1-15-66, 1-15-67, and 1-15-68, 2016-Ohio-2982, ¶ 13. Importantly, the Rules of Civil Procedure are not binding upon a juvenile court, but courts have found that the civil rules can provide discretionary guidance. *In the Matter of R.R.*, 4th Dist. Athens No. 17CA21, 2017-Ohio-8928, ¶ 23 ("Most appellate districts have held either expressly or, by implication in their analyses, that Civ.R. 24 provides *guidance* to the trial court in juvenile custody proceedings.") (Emphasis sic.).

{¶21} In this case, Carrie argues that although she was not automatically a party to this case under Juv.R. 2(Y), she should have been allowed to intervene as a

---

[2] For reference, custodian is defined in Juv.R. 2(H): "Custodian" means a person who has *legal* custody of a child or a public children's services agency or private child-placing agency that has permanent, temporary, or legal custody of a child." (Emphasis added.) Thus Carrie would not qualify as a "custodian" because she does not have "legal custody" of R.B., merely temporary custody.

third party pursuant to Civil Rule 24, which generally governs intervention in civil

cases.  It reads as follows.

**(A)** **Intervention of Right.** **Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.**

**(B)** **Permissive Intervention.** **Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of this state confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.**

**(C)** **Procedure.** **A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Civ.R. 5. The motion and any supporting memorandum shall state the grounds for intervention and shall be accompanied by a pleading, as defined in Civ.R. 7(A), setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute of this state gives a right to intervene.**

Notably, "[b]oth Juv.R. 2(Y) and Civ.R. 24(B) imbue the trial court with *discretion* to permit intervention under the appropriate circumstances." (Emphasis added.) *In the Matter of B.A.*, 7th Dist. Noble Nos. 16NO0433, 2017-Ohio-1019, ¶ 21.

{¶22} In analyzing Civ.R. 24 in this matter, Carrie first contends that she should have been able to intervene as of right pursuant to Civ.R. 24(A). However, the Supreme Court of Ohio has been clear that, "The law does not provide grandparents with inherent legal rights based simply on the family relationship." *In re H.W.*, 114 Ohio St.3d 65, 2007-Ohio-2879, ¶ 9, citing *In re Whitaker*, 36 Ohio St.3d 213, 215 (1988). Juvenile Rule 2(Y) "grants a child's grandparents the right to be *automatically* joined as necessary parties to a custody hearing if, and only if, the child's parent or parents are under the age of majority." (Emphasis added.) *In re H.W.* at ¶ 10. Under the circumstances of this case, since neither Amber nor Devin are juveniles, and since the Supreme Court of Ohio has indicated there are not inherent legal rights for grandparents based on the family relationship, there is no legal basis for an intervention as of right under Civ.R. 24(A).

{¶23} Thus we must determine if the trial court abused its discretion in denying Carrie's motion to intervene under the non-binding Civil Rule 24(B). Regarding this provision, Carrie contends that she has grounds to permissively intervene because she is standing "*in loco parentis*" of R.B. since R.B. was placed in her temporary custody at the shelter care hearing. As we have noted previously,

"[s]ome appellate districts in Ohio have held that a grandparent has an appropriate basis from which to intervene in a permanent custody proceeding when that grandparent has stood in loco parentis to his or her grandchild." *In re A.T.*, 3d Dist. Crawford No. 3-19-07, 2019-Ohio-5038, ¶ 14, citing *In re C.M.*, 4th Dist. Athens No. 17CA16, 2017-Ohio-9037, ¶ 63, citing *In re N.M.*, 8th Dist. Cuyahoga No. 104498, 2016-Ohio-7967, ¶¶ 13-14; *In re C.M.*, 9th Dist. Summit No. 21720, 2004-Ohio-1984, ¶ 21; *In re D.T.*, 10th Dist. Franklin No. 07AP-853, 2008-Ohio-2287, ¶ 11; *In re B. Children*, 12th Clermont No. 2007-06-077, 2008-Ohio-354, ¶ 22.

{¶24} "In loco parentis 'exists when [a] person undertakes care and control of another in absence of such supervision by [the] latter's natural parents and in absence of formal legal approval * * *.' " *In re N.M., supra*, at ¶ 15, quoting Black's Law Dictionary 787 (6th Ed.1990).

> **"The term 'in loco parentis' means 'charged, factitiously, with a parent's rights, duties, and responsibilities.' " *State v. Noggle*, 67 Ohio St.3d 31, 33, 1993-Ohio-189, 615 N.E.2d 1040, quoting Black's Law Dictionary (6 Ed. 1990) 787. A person who stands in loco parentis to a child has assumed similar duties to that of a guardian or custodian, only not through legal proceedings. *Id.***

*In re J.B.*, 8th Dist. Cuyahoga No. 103521, 2016-Ohio-5513, ¶ 48, quoting *State v. Burgett*, 3d Dist. Marion No. 9-09-14, 2009-Ohio-5278, ¶ 23; *In re A.T.* at ¶ 16.

{¶25} In this case, the trial court found that Carrie only "assumed the care and control of the Child under the <u>express legal approval</u> of this Court. She therefore does not have standing as a person who has acted in loco parentis." (Emphasis sic.)

The record supports the trial court's determination in that there is no indication in the record that Carrie assumed any duties in caring for R.B. prior to the trial court's order, which means Carrie only assumed her duties through a court order.

{¶26} However, this was not the only reason that the trial court denied Carrie's motion to intervene. The trial court also reasoned that it had an obligation to protect the interests of the children's parents as parties to the action and that by permitting Carrie's intervention, the parties, especially Amber, would have another party opponent. (Doc. No. 66) citing *In re A.T.* at ¶ 19.

{¶27} In addition, the trial court was persuaded by the following passage that this Court quoted *In re A.T.*, 3d Dist. Crawford No. 3-19-07, 2019-Ohio-5038, ¶ 20:

> **if the maternal grandparents seek placement as an alternative to a grant of permanent custody, then they do not need to be afforded party status to present that \* \* \*. If a child cannot be reunited to the family home in a reasonable time and an alternative placement is required, then the maternal grandparents technically do not need to intervene to be afforded party status to be considered for the placement of the child as they are persons within the preferred class of people the statute provides should be considered for alternate placement.**

The trial court directly quoted this language from the *In re A.T.* opinion and the trial court was evidently keenly aware of the possibility that Carrie could still seek legal custody as an alternative to a grant of permanent custody, if the case came to that point. Further, the trial court emphasized that, "the Movant's goal of legal custody to herself is contrary to the permanency goal stated in the case plan as adopted by

the court." (Doc. No. 66). The current case plan seeks reunification and Amber expressed to the GAL that her desire was to be reunited with R.B.

{¶28} We are aware that there are some slight factual differences between this case and the case of *In re A.T.*; however, the legal reasoning is readily applicable to the case before us, particularly in a discretionary matter.[3] Under the specific facts and circumstances of this case, we cannot find that the trial court abused its discretion by denying Carrie's motion to intervene, particularly where Carrie still has the opportunity to be considered for legal placement of R.B. if reunification does not occur.[4] For these reasons, Carrie's assignment of error is overruled.

*Conclusion*

{¶29} For the foregoing reasons Carrie's assignment of error is overruled and the judgment of the Allen County Common Pleas Court, Juvenile Division, is affirmed.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

---

[3] We note another case out of this Court, *In re B.L.*, 3d Dist. Allen Nos. 1-15-65, 1-15-66, 1-15-67, and 1-15-68, 2016-Ohio-2982, discussed the necessity of including pleadings with a motion to intervene in order to satisfy Civ.R. 24(C). However this issue was not addressed by the trial court, therefore we will not address it either.

[4] We are aware of the two cases attached to the brief by Carrie from the same juvenile court wherein grandparents were permitted to intervene. Those cases are not before us for review, and one predates our opinion release of *In re A.T.*, discussed at length herein. The fact that disparate holdings are coming out of the same juvenile court is not necessarily of concern given that it is a discretionary matter; however, given that the juvenile court is evidently issuing different rulings regarding grandparent intervention in cases such as this, it is very important for the trial court to state its reasons for granting or denying a motion to intervene so that the determination can be adequately reviewed.