[Cite as *State v. Jordan*, 2017-Ohio-381.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 103890

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CHARLES V. JORDAN

DEFENDANT-APPELLANT

---

## JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-596240-A

**BEFORE:** Laster Mays, J., Keough, A.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** February 2, 2017

-i-

**ATTORNEY FOR APPELLANT**

Edward M. Heindel
400 Terminal Tower
50 Public Square
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:    Andrew F. Rogalski
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

**{¶1}** Defendant-appellant Charles V. Jordan ("Jordan") appeals his convictions and sentence and asks this court to reverse the decision of the jury. We affirm.

**{¶2}** Jordan was found guilty of rape, a first-degree felony, in violation of R.C. 2907.02(A)(2); sexual battery, a third-degree felony, in violation of R.C. 2907.03(A)(5); kidnapping, a first-degree felony, in violation of R.C. 2905.01(A)(4); and kidnapping, a first-degree felony, in violation of R.C. 2905.01(A)(2). In addition, Jordan was found guilty of repeat violent offender specification, notice of prior conviction, and sexual motivation specifications on the kidnapping charges.

**{¶3}** During sentencing, the trial court merged the rape count with the sexual battery count and also merged both kidnapping counts with each other. The trial court then imposed a prison sentence of nine years on each count to be served concurrently and determined that Jordan was a Tier III sex offender. Jordan was advised by the trial court that he would be placed on postrelease control for a mandatory period of five years. As a result, Jordan has filed this timely appeal assigning three errors for our review:

I. The convictions on Counts One through Four for rape, sexual battery, and kidnapping were against the manifest weight of the evidence, and not supported by sufficient evidence;

II. The trial court erred when it allowed the sexual motivation specification to be tried to the court without a written jury waiver made in open court pursuant to R.C. 2945.05; and

III. The trial court erred when it convicted and sentenced the defendant

on both rape and kidnapping, as they are allied offenses of similar import.

## I.  Facts

**{¶4}** Jordan was convicted of rape, sexual battery, and two counts of kidnapping against his girlfriend's daughter, C.D.  C.D. testified at trial that Jordan began sexually abusing her when she was ten years old.  Jordan and C.D.'s mother, J.M., were dating, and Jordan lived with J.M., C.D., and her siblings since C.D. was two years old.  C.D. testified that Jordan was like a father to her even though Jordan and J.M. were not married.

**{¶5}** When C.D. turned ten years old, Jordan started touching her on her vagina and buttocks.  C.D. testified that Jordan would rub his fingers between her vagina and would grab her butt.  Jordan would take C.D. to his room when J.M. was at work and would perform sexual acts on her.  Jordan began penetrating C.D. anally with his penis when she was 12 years old causing her to bleed from her rectum.  When C.D. told Jordan about the bleeding, Jordan advised C.D. to put a hot rag on it so it would heal.  Once C.D. turned 14 years old, Jordan started vaginally penetrating C.D. against her will.  When C.D. would refuse or complain, Jordan would punish her by making her clean the entire house by herself.

**{¶6}** C.D. described the first time that Jordan vaginally penetrated her and testified that Jordan laid C.D. on her back, opened her legs, and put his penis into her vagina.  He then turned C.D. over onto her stomach and anally penetrated her.  Jordan would make C.D. shower each time after he had sex with her so C.D.'s mother would not know what

took place. Jordan also informed C.D. that if she ever told anyone about the sexual contact, Jordan would make sure that C.D. and her mother would get into trouble. Jordan would always wait until C.D.'s mother was at work and her siblings were out of the house when he had sexual contact with C.D.

{¶7} During a period of time, J.M., C.D., and C.D.'s siblings moved out of Jordan's home. During this time, Jordan would pick C.D. up from her home and take her back to his home telling J.M. that he needed C.D. to do chores. Jordan would then make C.D. perform oral sex on him. Shortly thereafter, J.M., C.D., and her siblings moved back in with Jordan, and the abuse continued. C.D. decided to record Jordan admitting to the abuse. On the recording, Jordan asks C.D. if she thought it was wrong that he had sex with her. Jordan tells C.D. to forget about it and move on. Once Jordan and C.D.'s mother broke off their relationship, C.D. told her mother about the abuse. C.D.'s mother called the police the next day.

{¶8} After an investigation, Jordan was charged with 35 counts of rape, sexual battery, kidnapping, and intimidation of a crime or witness. The rape and kidnapping charges contained specifications for a notice of prior conviction. The kidnapping charges contained a sexual motivation specification. Jordan expressed that he wished to waive the right to have those specifications heard by the jury, and instead asked that the court hear the evidence pursuant to those specifications.

**{¶9}** Jordan was found guilty of four of the 35 counts, including rape, sexual battery, and kidnapping. He was sentenced to nine years imprisonment. **II.**

### Sufficiency of the Evidence

**A.     Standard of Review**

**{¶10}** When an appellate court reviews a claim of insufficient evidence:

> "[T]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.

*State v. Pridgett*, 8th Dist. Cuyahoga No. 101823, 2016-Ohio-687, ¶ 14.

**B.     Law and Analysis**

**{¶11}** In the second prong of Jordan's first assignment of error, he argues that the convictions on Counts 1 through 4 for rape, sexual battery, and kidnapping were not supported by sufficient evidence.

> The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

*Pridgett* at ¶ 15.

**{¶12}** Jordan was convicted of rape, in violation of R.C. 2907.02(A)(2); sexual battery, in violation of R.C. 2907.03(A)(5); and kidnapping, in violation of R.C. 2905.01(A)(2) and (4). The statutes read as follows:

> No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

R.C. 2907.02(A)(2).

> No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.

R.C. 2907.03(A)(5).

> No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: To facilitate the commission of any felony or flight thereafter.

R.C. 2905.01(A)(2).

> No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will.

R.C. 2905.01(A)(4).

**{¶13}** C.D. testified that Jordan was like a father to her. C.D.'s mother testified that Jordan "took up the father role immediately upon starting their relationship." (Tr. 622.) C.D. lived with Jordan from the time she was two-years old until she was 16 years old, with the exception of a small period of time of six months. C.D. testified that

Jordan financially provided for her and her siblings and acted as a father to them. For the purpose of R.C. 2907.03(A)(5), Jordan argues that he was not in loco parentis of C.D. We disagree.

> "The term 'in loco parentis' means 'charged, factitiously, with a parent's rights, duties, and responsibilities.'" A person who stands in loco parentis to a child has assumed similar duties to that of a guardian or custodian, only not through legal proceedings. In order to meet the definition of in loco parentis, a person must not only assume a dominant parental role, but must also be relied upon by the child for support. Furthermore, "[t]he key factors of an in loco parentis relationship have been delineated as 'the intentional assumption of obligations incidental to the parental relationship, especially support and maintenance.'"

(Citations omitted.)  *In re J.B.*, 8th Dist. Cuyahoga No. 103521, 2016-Ohio-5513, ¶ 48, quoting *State v. Burgett*, 3d Dist. Marion No. 9-09-14, 2009-Ohio-5278, ¶ 23.

{¶14} C.D. testified that Jordan began sexually touching her when she was ten years old and started penetrating her anally when she turned 12, and vaginally when she turned 14 years old. Jordan would take C.D. from her room to his room to abuse her, and kept her in the house so he could continue to abuse her. In addition, Jordan told C.D. that if she told, C.D. and her mother would get into trouble. Jordan argues that he had consensual sex with C.D. and that there is no evidence that he forced or threatened her. However, we disagree. Because of the parent-child relationship that existed between Jordan and C.D., Jordan did not have to physically force C.D. to engage in sexual intercourse. "In certain scenarios, especially those involving parent-child relationships, a child may feel compelled or psychologically coerced into submitting to her aggressor for reasons other than an overt show of force or threats of force." *State v. Weems*, 8th Dist. Cuyahoga No. 102954, 2016-Ohio-701, ¶ 25.

{¶15} When asked why she initially did not tell someone about Jordan sexually assaulting her, C.D. responded that she was scared that Jordan would hurt her. C.D. testified about a time when someone in the household snuck and ate Jordan's peanuts. The person would not admit to it, so Jordan instructed the children to stand against the wall and hold books until someone confessed. C.D., although she did not eat the peanuts, confessed because her arms were tired from holding the books. Later C.D. told Jordan that it was not her that ate the peanuts, but she falsely confessed in order to stop the punishment. As a result of her false confession, Jordan made C.D. clean the entire house by herself, and if she stopped, she would get into trouble. C.D. also stated that

Jordan put a blade to her neck and told her that he was not one to be played with. C.D. described that she was very scared because Jordan was angry, and she thought he would hurt her in addition to hurting her mother.

{¶16} Although the appellant claims that direct force was not used to engage C.D. into having sex with him, "force may be established by testimony that the defendant purposely compelled the victim by overcoming her will by fear." *State v. Rupp*, 7th Dist. Mahoning No. 05 MA 166, 2007-Ohio-1561, ¶ 40. It can be determined that "the force can be established by a victim's testimony that she feared retaliation if she did not engage in sexual conduct where testimony also showed that he previously instilled fear in the victim with stories of violence." *Id.* "Thus, it is up to the jury to determine if they believe that it was the defendant's intent to instill fear through his stories and also to determine if they believe that the victim was in fact instilled with such fear that she could not exercise her will." *Id.* We can determine from C.D.'s testimony that Jordan instilled fear in her from his previous behavior of violence.

{¶17} Jordan also transported C.D. from her home in Euclid to his home under the guise of doing chores, to perform oral sex on C.D., and have oral sex performed on Jordan. C.D. also recorded Jordan admitting to having sex with her. The evidence admitted at trial would convince the average mind of the defendant's guilt beyond a reasonable doubt. The second part of the first assignment of error is overruled.

### III.	Manifest Weight of the Evidence

### A.	Standard of Review

**{¶18}** In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether,

> "[T]here is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt."  In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"

(Emphasis deleted.)   *Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81.

**{¶19}** "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.   Weight of the evidence concerns:

> "[T]he inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.

(Emphasis added.)   *Id.* at 387, citing   *Black's Law Dictionary* 1433 (6th Ed.1990).

**B.     Law and Analysis**

**{¶20}** In the first part of Jordan's first assignment of error, he argues that the convictions on Counts 1 through 4 for rape, sexual battery, and two counts of kidnapping were against the manifest weight of the evidence.

> "A manifest weight challenge questions whether the state met its burden of persuasion at trial."   Although an appellate court reviews credibility when considering the manifest weight of the evidence, the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. The trier of fact is best able "'to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'"

(Citations omitted.)   *Pridgett*, 8th Dist. Cuyahoga No. 101823, 2016-Ohio-687, ¶ 21.

**{¶21}** Specifically, Jordan argues that because there was not any physical evidence to substantiate the claims made by C.D., the jury should not have convicted him.   He contends that C.D. had no physical evidence or injury of repeated anal penetration. However, "a physical injury is not a condition precedent to a conviction for rape; not all rape victims exhibit signs of physical injury."   (Citations omitted.)   *Id*. at ¶ 22.   *See also State v. Evans*, 8th Dist. Cuyahoga No. 85396, 2005-Ohio-3847*, ¶* 36 ("physical harm is not a necessary element of rape and we are mindful that witness credibility rests primarily with the trier of fact").   The jury listened to all of the testimony by each witness.   They were able to observe the witnesses' demeanors, gestures, and voice inflections and used these observations in weighing the credibility of C.D.

**{¶22}** Jordan also argues that there is no corroborating evidence regarding the rapes and sexual abuse.   However it has been well established that "there is no

requirement, statutory or otherwise, that a victim's testimony be corroborated as a condition precedent to a rape conviction." *State v. Leonard*, 8th Dist. Cuyahoga No. 98626, 2013-Ohio-1446, ¶ 46. "A victim's testimony, if believed, is sufficient to obtain and sustain a rape conviction." *State v. Williams*, 8th Dist. Cuyahoga No. 57464, 1990 Ohio App. LEXIS 5221 (Nov. 29, 1990). Thus, the first part of the appellant's first assignment of error is overruled.

## IV. Jury Waiver

### A. Standard of Review

{¶23} In a criminal case,

> [W]here the defendant elects to waive the right to trial by jury, R.C. 2945.05 mandates that the waiver must be in writing, signed by the defendant, filed in the criminal action, and made part of the record thereof. Absent strict compliance with the requirements of R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury. *State v. Pless*, 74 Ohio St.3d 333, 658 N.E.2d 766 (1996). The failure to comply with R.C. 2945.05 may be remedied only in a direct appeal from a criminal conviction. *State v. Coleman*, 8th Dist. Cuyahoga No. 69202, 1996 Ohio App. LEXIS 1876 (May 9, 1996).

*State v. Tango*, 2015-Ohio-5133, 53 N.E.3d 961, ¶ 18 (8th Dist.).

### B. Law and Analysis

{¶24} In Jordan's second assignment of error, he contends that the trial court erred when it allowed the sexual motivation specifications to be tried to the court without a written jury waiver made in open court pursuant to R.C. 2945.05. R.C. 2945.05 states,

> In all criminal cases pending in courts of record in [Ohio], the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled

in the court and cause, and in substance as follows:  "I * * *, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending.  I fully understand that under the laws of this state, I have a constitutional right to a trial by jury."

Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel.  Such waiver may be withdrawn by the defendant at any time before the commencement of the trial.

{¶25} Jordan has misunderstood the applications of R.C. 2945.05.  "[T]he Ohio Supreme Court has held that the provisions of R.C. 2945.05 do not apply to requests made by a defendant to have the trial judge determine specifications."  *State v. Oldham*, 8th Dist. Cuyahoga No. 73644, 1999 Ohio App. LEXIS 2152 (May 13, 1999), citing *State v. Nagel*, 84 Ohio St.3d 280, 703 N.E.2d 773 (1999).

> "R.C. 2945.05, by its very terms, applies to pending 'criminal cases.' * * * Our understanding of the phrase is that it encompasses the underlying charge or charges in the criminal action against the accused but does not necessarily encompass the specification or specifications attached thereto. The reason, of course, is that a specification is, by its very nature, ancillary to, and completely dependent upon, the existence of the underlying criminal charge or  charges to which the specification is attached.  Therefore, we have difficulty understanding precisely how it is that R.C. 2945.05 could be found to apply in circumstances where, as here, a defendant has received a jury trial on the merits of the underlying charges alleged in the indictment."

*Id.*

{¶26} Jordan requested that the sexual motivation specifications be tried by the judge instead of the jury.  We find that since the Ohio Supreme Court has held that R.C. 2945.05 do not apply to this situation, we overrule Jordan's second assignment of error.

## V.    Allied Offenses

### A.    Standard of Review

**{¶27}** "An appellate court applies a de novo standard of review when reviewing whether two offenses are allied offenses of similar import." *State v. Boczek*, 8th Dist. Cuyahoga No. 103811, 2016-Ohio-5708, ¶ 4.

### B.    Law and Analysis

**{¶28}** In Jordan's third assignment of error, he argues that the trial court erred when it convicted and sentenced him on both rape and kidnapping, because they were allied offenses of similar import.

**{¶29}** R.C. 2941.25 provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B)  Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶30}** When determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25,

[C]ourts must ask three questions when defendant's conduct supports multiple offenses:    (1) Were the offenses dissimilar in import or significance — in other words, did each offense cause separate, identifiable harm?   (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?   An affirmative answer to any of the above will permit separate convictions.   The conduct, the animus, and the import must all be considered.

*State v. Boczek*, 8th Dist. Cuyahoga No. 103811, 2016-Ohio-5708, ¶ 6, citing *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.

**{¶31}** First, we must determine that each offense of rape and kidnapping caused a separate, identifiable harm. Jordan committed rape against C.D. when he forcibly engaged in sexual conduct with her. "The kidnapping statute 'punishes certain removal or restraint done with a certain purpose and the eventual success or failure of the goal is irrelevant.'" *State v. Price*, 8th Dist. Cuyahoga No. 99058, 2013-Ohio-3912, ¶ 28; *State v. Smith*, 9th Dist. Summit Nos. 23468 and 23464, 2007-Ohio-5524, ¶ 41, quoting *State v. Matthieu*, 3d Dist. Mercer Nos. 10-02-04 and 10-02-05, 2003-Ohio-3430, ¶ 17.

**{¶32}** Jordan kidnaped C.D. by removing her from her home under the guise of cleaning his home. While C.D. and Jordan were living together, Jordan would send C.D.'s siblings to the store and restrained C.D. so she could not leave the home. C.D. was harmed by Jordan when she was removed from her home and taken to his home without her permission. This harm is separate and identifiable because as C.D. traveled from her home in Euclid to Jordan's home in Cleveland, she feared Jordan and what further harm he would inflict upon her. She was further harmed by being forced to engage in sexual conduct with Jordan.

**{¶33}** Second, we must determine that the rape and kidnapping were committed separately. There are incidents where the victim was restrained while being sexually assaulted. However, Jordan was not charged with that type of kidnapping. Rather, C.D.'s kidnapping occurred prior to the incident of rape when Jordan removed C.D. from

her home against her will.

{¶34} Third, we must determine whether the rape and kidnapping were committed with a separate animus or motivation. Like the facts in *State v. Person*, 9th Dist. Summit No. 27600, 2016-Ohio-681, ¶ 29, Jordan's kidnapping of C.D. was separate from the subsequent rape that occurred and was motivated by a separate animus. Jordan kidnapped C.D. to isolate her from her family. Once she was in his home, he raped her. Therefore, the rape and kidnapping were committed with a separate animus or motivation. Thus, Jordan's third assignment of error is overruled.

{¶35} Judgment is affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
TIM McCORMACK, J., CONCUR